**Thomas HEMINGWAY, Appellant–Respondent,**

v.

**Dawn SANDOE, Appellee–Petitioner.**

No. 49A05–9608–JV–341.

Court of Appeals of Indiana.

Feb. 12, 1997.

See also 612 N.E.2d 174, opinion adopted, 624 N.E.2d 471.

---

Lesa Lux Johnson, Indianapolis, for Appellant–Respondent.

M. Kent Newton, Leah S. Mannweiler, Anthony W. Mommer, Kreig DeVault Alexander & Capehart, Indianapolis, for Appellee–Petitioner.

## OPINION

BARTEAU, Judge.

Upon the dissolution of their marriage in Harris County, Texas on January 19, 1988, Thomas Hemingway and Dawn Sandoe agreed to a joint managing conservatorship of their two children. On December 18, 1988, Dawn Sandoe filed a Petition for Modification of Custody, Visitation and Attorney Fees in Marion County, Indiana. Subsequent to the filing of Sandoe's petition, the children were found to be children in need of services (CHINS) and Hemingway's parental rights were terminated. All of the litigation centered on allegations that Hemingway had sexually molested the two children. The CHINS determination and the termination of parental rights were reversed on jurisdictional grounds. *Matter of E.H.*, 612 N.E.2d 174 (Ind.Ct.App.1993), *opinion adopted,* 624 N.E.2d 471 (Ind.1993).

Sandoe then filed a motion for summary judgment on the issue of custody, seeking removal of the joint managing conservatorship and sole custody in herself. The trial court granted summary judgment in favor of Sandoe. Hemingway contends that child custody may not be determined by summary judgment. We agree.

## STANDARD OF REVIEW

■ In an appeal from a grant of summary judgment, the reviewing court faces the same issues as the trial court because summary judgment is appropriate only if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Wolvos v. Meyer,* 668 N.E.2d 671, 674 (Ind.1996); Ind. Trial Rule 56(c). Thus, even though a summary judgment is presumed to be valid and the appealing party bears the burden of persuasion, the appellate court follows the same process as the trial court. *Id.* The evidence before the court must be liberally construed in the light most favorable to the non-moving party. *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.* The reviewing court must provide careful scrutiny of the trial court's determination to assure that the non-prevailing party is not improperly denied his day in court. *Id.*

■ The trial court entered extensive findings of fact and conclusions of law. While normally the requested entry of specific findings and conclusions triggers a different standard of review, it does not do so in summary judgment proceedings. *P.M.S., Inc. v. Jakubowski,* 585 N.E.2d 1380, 1381, n. 1 (Ind.Ct.App.1992). By its very nature, a summary judgment is a judgment entered when there are no genuine issues of material fact to be resolved. *Id.* Thus, in the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id..* Hence, we employ our usual standard of review for cases disposed of by summary judgment.

## DECISION

■ The trial court may not modify a child custody order unless:

(1) it is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter.

Ind.Code § 31–1–11.5–22(d). "In making its determination, the court shall consider the factors listed under section 21(a) of this chapter." Ind.Code § 31–1–11.5–22(e). The factors to be considered are:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

Ind.Code § 31–1–11.5–21(a).

Summary judgment is only available when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). Each of the factors identified in Indiana Code section 31–1–11.5–21(a) requires a factual determination, as does a determination of what is in the "best interests" of the child. For this reason, summary judgment is never appropriate in a child custody determination. *Von Behren v. Von Behren,* 252 Ind. 542, 251 N.E.2d 35 (1969) (trial court's determination of child custody necessarily involves a finding of fact and precludes summary judgment by definition).

■ The pleadings and judgment is this case provide ample illustration for this rule. In her motion for summary judgment Sandoe contended that there was no genuine issue of material fact, that it was overwhelmingly in the children's best interest that she be granted sole legal custody, and that, as a matter of law, sole custody should be awarded. In granting Sandoe's motion for summary judgment, the trial court adopted Sandoe's proposed findings of fact, conclusions of law, and judgment. The judgment provides "that there is no genuine issue as to any material fact based upon the designated evidentiary matter and that Sandoe is entitled to a judgment as a matter of law." R. "C". However, the contents of Sandoe's motion, the evidence presented in support of the motion, and the trial court's judgment all belie the conclusion that there is no genuine issue of material fact. In support of her motion for summary judgment, Sandoe alleged physical and sexual abuse of the children by Hemingway, that Hemingway had been absent from the children's lives for several years, that Hemingway demonstrated a total lack of parenting ability, that the children would be endangered in Hemingway's presence and that Hemingway had willfully failed to meet his responsibilities as a parent.

■ Attached to the motion were approximately five volumes of materials, including transcribed testimony from the CHINS and termination proceedings, affidavits and exhibits. The materials attached to the motion for summary judgment dealt almost exclusively with the allegations of sexual abuse and the perceived effect of the alleged abuse upon the children. Also attached was Dawn Sandoe's affidavit, affirming that Hemingway had taken no steps toward meeting his parental responsibilities, including paying support, that the joint custody or joint managing conservatorship had not been in effect for the past several years, that it would be injurious to the children for Hemingway to have or exercise any rights which arise from joint custody or joint managing conservatorship, that the children were doing well without contact from or parenting by Hemingway, and that it would be in the children's best interest for the court to end the joint managing conservatorship and place the sole custody of the children in Sandoe. Even though the evidence Sandoe presented in support of her contention is quite substantial, the evidence nevertheless pertains to factual issues. Whether Hemingway molested the children, whether he voluntarily absented himself from their lives, whether he lacks any parenting

ability, and whether Hemingway's joint custody is injurious to the children are all factual questions underlying a best interests of the child determination. In like manner, the trial court's findings of fact address factual determinations. The findings reproduce the information contained in Sandoe's affidavit and contain extensive details of the alleged molestation and resulting trauma to the children. In light of Hemingway's continuing denial that the molestation occurred, a question of fact remains.[1]

Given the extensively litigated circumstances in this case, we understand the temptation to summarily determine that joint custody is not in the children's best interests and to grant Sandoe sole custody of the children. However, the volume or persuasiveness of evidence does not change the nature of the court's determination. Because a custody determination inherently involves factual determinations, the use of summary judgment is inappropriate.

We therefore reverse the grant of summary judgment and remand. However, for the following reasons, the Juvenile Court, upon remand, is obligated to transfer the cause to the Marion Superior Court, Civil Division.

The lengthy history of this dispute reflects that the first filing in the Indiana courts was the December 19, 1989 petition by Sandoe to modify custody. That petition was originally and properly filed in the Marion Superior Court, Civil Division. Only after the filing of the CHINS and parental termination proceedings in the Juvenile Division, the court which had exclusive jurisdiction over those matters, did the Civil Division defer jurisdiction to the CHINS court. The issues were consolidated in the CHINS court.

As noted earlier, this court, in an opinion adopted by our Supreme Court, determined that the Indiana Juvenile Court lacked jurisdiction to make its non-emergency CHINS determination or to terminate Hemingway's parental rights. *Matter of E.H.*, 612 N.E.2d 174. We there noted that the Texas courts had effectively deferred jurisdiction over custody matters to Indiana and that because Sandoe already had been awarded physical custody of the children, the sole remaining "custody" issue, separate and apart from visitation, was the Texas decree's appointment of Hemingway as "Joint Managing Conservator." Accordingly we opined that it would be within the discretion of an Indiana court to modify or terminate that "joint custody" arrangement as to cooperative decision making concerning education, religious training, etc. We additionally noted, however, that the court to make such modification was "not necessarily a CHINS court." *Id.* at 188.

The contemplation of an appropriate exercise of "custody" jurisdiction by a CHINS court presupposed existence of exclusive jurisdiction over matters in the CHINS court, to which the matter of custody is collateral, e.g. jurisdiction over an emergency situation pursuant to the Uniform Child Custody Jurisdiction Act. In such instance, the exercise of emergency CHINS jurisdiction might properly carry with it jurisdiction to determine the collateral issue of custody. See *P.B. v. T.D.* 504 N.E.2d 1042 (Ind.Ct.App.1987) (while a valid CHINS proceeding is pending in Circuit Court exercising juvenile jurisdic-

---

1. In response to Sandoe's motion for summary judgment and extensive exhibits, Hemingway filed only his own affidavit denying Sandoe's allegations that he had molested the children and denying that it was in the best interest of the children that custody be changed. Sandoe contends that Hemingway's affidavit is insufficient to counter her designated evidentiary material and therefore the grant of summary judgment may not be reversed.

   Indiana Trial Rule 56(H) provides that no summary judgment shall be reversed on the ground that there is a genuine issue of material. fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. However, this rule does not change the burden of proof for summary judg-

ment. Before a trial court may grant summary judgment, the moving party must make a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *O'Connor by O'Connor v. Stewart*, 668 N.E.2d 720 (Ind.Ct.App. 1996). It is only after these two requirements are met that the burden then shifts to the non-moving party who must point to specifically designated facts which establish an issue of material fact. *Id.* Because a custody determination inherently involves a question of fact, the moving party cannot establish that there are no genuine issues of material fact. Thus, the burden never shifts to the non-moving party to present contrary evidence. Consequently, the sufficiency of Hemingway's affidavit is immaterial.

tion, the Superior Court may not, inconsistent with the custody established in the CHINS proceeding, modify the custody conferred by a Superior Court dissolution decree).

Divested of the CHINS or parental rights termination aspects of the dispute here, the sole issue remaining is as to Sandoe's petition insofar as it seeks a modification of the custody award made by the Texas court. General jurisdiction over child custody matters follows the jurisdiction which is vested with respect to dissolution matters. *Chapman v. Grimm & Grimm, P.C.,* 638 N.E.2d 462, 465 (Ind.Ct.App.1994); *Krieg v. Glassburn,* 419 N.E.2d 1015, 1017 (Ind.Ct. App.1981). Only courts of general jurisdiction have such jurisdiction. *Carithers v. Carithers,* 116 Ind.App. 607, 610, 65 N.E.2d 640, 641 (1946). Juvenile courts have no jurisdiction in dissolution proceedings; accordingly they have no jurisdiction over the custody of a child, other than as hereinbefore suggested. *Sanders v. Sanders,* 160 Ind.App. 174, 179, 310 N.E.2d 905, 908 (1974).

The jurisdiction of the juvenile court here is not validated by the fact that the court is designated as the Juvenile Division of the Marion Superior Court. The same could have been said of the DeKalb Circuit court which, although a court of general jurisdiction, was exercising juvenile jurisdiction in *Sanders.* In this regard, most recently, this court held that although a court exercising juvenile jurisdiction and a court exercising dissolution jurisdiction are both divisions of the same Superior Court, in exercising jurisdiction the courts must be viewed as separate courts. *L.D.H. v. K.A.H,* 665 N.E.2d 43, 47–48 (Ind.Ct.App.1996).

Lacking the general jurisdiction to determine matters of child custody in the light of a dissolution custody decree, the Juvenile Court, upon remand, is obligated to transfer the cause to the Marion Superior Court, Civil Division.

Reversed and remanded with instructions.

SULLIVAN and RUCKER, JJ., concur.