In the Matter of the ADOPTION OF T.B.

LAKE COUNTY DIVISION OF FAMILY AND CHILDREN SERVICES, Appellant–Respondent Below,

v.

T.B., Appellee–Petitioner Below.

No. 45A03–9207–CV–00211.

Court of Appeals of Indiana, Third District.

Feb. 17, 1993.

Rehearing Denied March 31, 1993.

Eugene M. Velazco, Jr., Cynthia H. Kambesis, Gary, for appellant-respondent.

John T. Casey, Blaney, Casey & Walton, Rensselaer, for Donna Jean Sudis.

Christina J. Miller, Theodoros, Theodoros & Rooth, P.C., Merrillville, guardian ad litem, for T.B.

STATON, Judge.

The Lake County Division of Family and Children Services ("FCS") appeals the grant of Donna Sudis' petition to revoke the adoption of T.B. Two issues are presented for our review:

 I. Whether the Lake Circuit Court had subject matter jurisdiction during the pendency of a juvenile court proceeding.

 II. Whether the judgment is supported by the evidence.

We reverse for lack of subject matter jurisdiction.

T.B. was born on August 13, 1975. During 1983, T.B. was removed from the custody of her biological mother and was placed in the Carmelite Home for Girls. Sudis, who regularly visited the Carmelite Home, was advised that T.B. was a neglected child who exhibited some behavioral problems. Following a three year period of visitation, Sudis adopted T.B. on August 27, 1986.

T.B.'s behavioral problems escalated with the onset of adolescence. Evidence presented at the revocation hearing disclosed that T.B. was promiscuous, drank alcohol, committed petty thefts, destroyed property and struck Sudis on multiple occasions. T.B. also made death threats against her biological and adoptive mothers.

After T.B. ran away from home, Sudis sought the intervention of the Lake County Juvenile Court. On July 12, 1991, the juvenile court found probable cause that T.B. was a child in need of services and placed T.B. in a residential shelter care facility. On August 7, 1991, Sudis filed her "Petition to Revoke an Adoption" in the Lake Circuit Court (amended October 21, 1991). FCS unsuccessfully sought dismissal of the petition for lack of subject matter jurisdiction and failure to state a claim for relief. Hearing was held on January 21 and 27, 1992; on March 23, 1992, Sudis' petition was granted. This appeal ensued.

I.

*Jurisdiction of the Lake Circuit Court*

■ FCS contends that the Lake County Juvenile Court had exclusive jurisdiction in this matter, pursuant to IND.CODE 31–6–2–1.1(a) which provides in pertinent part:

 "A juvenile court has exclusive original jurisdiction, except as provided in section 1.5 of this chapter, in the following: ... (2) Proceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services ... (5) Proceedings governing the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for a child."

■ No court may entertain a proceeding which in any way conflicts with the exclusive jurisdiction vested in the juvenile court by the commencement of a Child in Need of Services ("CHINS") proceeding. *Lucas v. Grant County DPW* (1986), Ind. App., 495 N.E.2d 798, 799.

Sudis sought to be relieved of all parental responsibility for T.B., including any participation in T.B.'s program for treatment at Elan, a treatment facility to which T.B. was transferred as a ward of FCS. However, Sudis addressed her petition for relief to the Lake Circuit Court after the juvenile court's formal assumption of jurisdiction. The issue of whether Sudis should exercise parental responsibility toward T.B. was vested solely in the juvenile court at the commencement of the CHINS proceeding. *Id.*[1]

Assuming that little or no parental participation by Sudis is in T.B.'s best inter-

---

**1.** The dissent observes that the Lake Circuit Court exercises probate jurisdiction and handles adoption matters; the Juvenile Court Division does not. Pursuant to IND.CODE 33–5–29.5–4(a), the superior court has the same jurisdiction as the Lake circuit court in all civil and probate cases. IND.CODE 31–3–1–1(a) provides that an Indiana resident *desiring to adopt a child* may petition to adopt the child in any court having probate jurisdiction. There exists no parallel provision whereby an applicant may seek to revoke the adoption of a child. The sole remedy for a parent—such as Sudis—who wishes to limit her parental participation after a

ests, the juvenile court is empowered to fashion its order accordingly. I.C. 31–6–2–1.1. Moreover, T.B.'s guardian ad litem may petition the juvenile court for termination of the parental relationship. IND. CODE 31–6–5–4(a)(4). [T.B.'s guardian ad litem consulted with T.B.'s therapist and the Elan staff to facilitate her recommendation to the Lake Circuit Court. The guardian indicated that she personally opposed an adoption revocation procedure, but "deferred to the experts" in recommending revocation. Record, p. 198.[2]]

The instant action was not conducted pursuant to the provisions of the juvenile code and must be reversed.

## II.

### *Evidentiary Support*

Next, FCS has alleged that certain findings of fact made by the Lake Circuit Court are unsupported by the evidence. A court must possess subject matter jurisdiction in order to render a valid judgment. *Chapin v. Huylse* (1992), Ind.App., 599 N.E.2d 217, 221. As no valid judgment is before this court, Issue I, *supra,* we need not address the adequacy of findings of fact and conclusions of law underlying the revocation order.

Reversed.

FRIEDLANDER, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent from the majority's ruling that the Lake Circuit Court lacked subject-matter jurisdiction in the adoption matter.

According to IND.CODE § 31–3–1–1(a) (1988 Ed.), courts with probate jurisdiction handle adoption matters. In Lake County, the superior court is divided into civil, criminal, county, and juvenile divisions. IND. CODE § 33–5–29.5–21(a) (1992 Supp.). The juvenile division of the Lake Superior Court does not have probate jurisdiction; therefore, it does not have subject-matter jurisdiction over adoption matters. The Lake Circuit Court, on the other hand, does have probate jurisdiction; therefore, under IND. CODE § 31–3–1–1(a), it has subject-matter jurisdiction over adoption matters.

Sudis filed her Petition to Revoke Adoption in the Lake Circuit Court, the same court which had originally granted the adoption. As the majority notes, the filing occurred after the juvenile court's commencement of the CHINS proceeding and sought to relieve Sudis of all parental responsibility for T.B., including any participation in treatment programs for T.B. Relying on *Lucas v. Grant County DPW* (1986), Ind.App., 495 N.E.2d 798, the majority holds that the circuit court's revocation of the adoption conflicted with the exclusive jurisdiction of the juvenile court under IND.CODE § 31–6–2–1.1(a) (1992 Supp.). However, as previously discussed, the juvenile court does not have probate jurisdiction. Consequently, even though the juvenile court had exclusive jurisdiction in the CHINS proceeding, it could only have exclusive jurisdiction in matters in which the court by statute has subject-matter jurisdiction. The juvenile court had no jurisdiction in the adoption matter.

The Lake Circuit Court did not lack subject-matter jurisdiction in the adoption matter.

---

child has been declared a child in need of services, is to petition the juvenile court for such relief. During the pendency of juvenile court proceedings, no court may entertain a proceeding which in any way conflicts with the jurisdiction vested in the juvenile court at the commencement of the CHINS proceeding. *Lucas, supra.*

2. T.B.'s therapist and a social worker at Elan apparently indicated (orally) to the guardian ad litem that continuation of the mother/daughter relationship would not be in T.B.'s best interests. T.B., who had suffered sexual abuse either perpetrated or permitted by her biological mother, was engaging in "displacement" of the consequent anger and was focusing that anger toward her adoptive mother. Removal of the "target" for the displaced anger would, in theory, permit T.B. to focus her energies more productively. Record, pp. 28, 37, 156, 198.